UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STATE OF WASHINGTON, | CASE NO. 2:23-cv-01370-TL |
| Plaintiff, | |
| v. | ORDER GRANTING MOTION TO REMAND |
| O'REILLY AUTO ENTERPRISES LLC, | |
| Defendant. | |

This action concerns alleged discrimination by Defendant O'Reilly Auto Enterprises against pregnant employees in Washington. The matter comes before the Court on Plaintiff the State of Washington's Motion to Remand. Dkt. No. 14. Having reviewed the relevant record and governing law, the Court GRANTS the motion but DENIES Plaintiff's request for costs and fees.

## I.   BACKGROUND

Plaintiff filed this case on August 16, 2023, in King County Superior Court. Dkt. No. 1-2. The complaint does not name specific individuals as plaintiffs and is brought by the Attorney General pursuant to Washington law. *See id.* at 2–3.

Plaintiff brings claims under the Washington Healthy Starts Act ("HSA"), RCW 43.10.005; the Washington Law Against Discrimination ("WLAD"), RCW 49.60.10, *et seq.*; and the Washington Consumer Protection Act ("CPA"), RCW 19.86.020. Dkt. No. 1-2 ¶¶ 5.1–5.15. The complaint seeks declaratory relief, a permanent injunction, "damages or other appropriate monetary relief to each person aggrieved by O'Reilly's discriminatory conduct," restitution to those harmed, civil penalties, and costs of suit. *Id.* ¶¶ 6.1–6.11.

Plaintiff alleges that Defendant maintains a policy or practice of unlawfully denying pregnancy accommodation requests by its employees for restroom breaks, food and drink allowances, taking a seat, schedule or job assignment modifications (including permission to refrain from lifting more than 17 pounds), and break time to pump breastmilk. *Id.* ¶ 4.10. According to Plaintiff, Defendant operates 169 stores across the state, and has received at least 134 requests for pregnancy accommodations from employees in those stores in recent years. *Id.* ¶¶ 4.5, 4.9. Plaintiff claims that O'Reilly not only routinely denied pregnancy accommodations but actively retaliated against workers who made them, despite public-facing representations that they treat workers fairly and do not discriminate on the basis of pregnancy, sex, or other protected statuses. *Id.* ¶¶ 4.6–4.7, 4.12.

Plaintiff seeks remand to state court on grounds that the case was improperly removed, maintaining that no diversity jurisdiction exists because the State of Washington is the only real party in interest in the suit, and the State is not a citizen of Washington State. Dkt. No. 14 at 6. Defendant argues that the approximately 22 women on whose behalf relief is sought are the real parties in interest, not the State, because: (1) the State is asserting only "a general governmental interest in enforcing its anti-discrimination laws"; and (2) the CPA claim "clearly was pled solely in a baseless and transparent attempt to divest [the federal court] of jurisdiction." Dkt. No. 17 at 6.

1

## II.   LEGAL STANDARDS

2    **A.   Diversity Jurisdiction**

3         Federal courts have limited jurisdiction and must ensure that they have subject matter

4    jurisdiction of all matters before them. *See, e.g.*, *United Invs. Life Ins. Co. v. Waddell & Reed,*

5    *Inc.*, 360 F.3d 960, 967 (9th Cir. 2004). As a general matter, federal courts have jurisdiction over

6    all cases "arising under" federal law ("federal question jurisdiction") and certain cases involving

7    citizens of different states ("diversity jurisdiction"). *Hansen v. Grp. Health Coop.*, 902 F.3d

8    1051, 1056 (9th Cir. 2018); *see also* 28 U.S.C. §§ 1331, 1332.

9         Diversity jurisdiction can be established when the amount in controversy exceeds the

10   jurisdictional minimum (currently $75,000 exclusive of interest and costs) and the suit is

11   between citizens of different states. 28 U.S.C. § 1332(a)(1). "There is no question that a State is

12   not a citizen for purposes of diversity jurisdiction." *Moor v. Alameda Cnty.*, 411 U.S. 693, 717

13   (1973), *reh'g denied*, 412 U.S. 963 (internal citation and quotation omitted); *accord Urbino v.*

14   *Orkin Servs. of Cal., Inc.*, 726 F.3d 1118, 1123 (9th Cir. 2013). However, when a state is found

15   to not be the real party in interest to a lawsuit, its involvement in the suit cannot defeat diversity

16   jurisdiction in the federal courts. *See Dep't of Fair Emp. & Hous. v. Lucent Techs., Inc.*, 642

17   F.3d 728, 737 (9th Cir. 2011) ("*Lucent*"). "[A] State's presence in a lawsuit will defeat

18   jurisdiction under 28 U.S.C. § 1332(a)(1) only if "the relief sought is that which inures to it

19   alone, and in its favor the judgment or decree, if for the plaintiff, will effectively operate." *Id.*

20   (internal citations and quotation omitted). In assessing to whom the relief sought accrues, courts

21   apply federal law but also consider interests the state has in the litigation pursuant to its own

22   substantive law. *Id.* at 738; *In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 354

23   F.Supp.3d 1122, 1124 (N.D. Cal. 2019) ("Whether a state is the real party in interest for diversity

24

1    jurisdiction purposes is a question of federal law, although the inquiry is informed by state law.")

2    (internal citations omitted).

3    **B.      Removal**

4           A defendant may remove cases that fall within a federal court's original jurisdiction. 28

5    U.S.C. § 1441(a). However, "[r]emoval and subject matter jurisdiction statutes are strictly

6    construed, and a defendant seeking removal has the burden to establish that removal is proper

7    and any doubt is resolved against removability." *Hawaii ex rel. Louie v. HSBC Bank Nev., N.A.*,

8    761 F.3d 1027, 1034 (9th Cir. 2014) (internal citations and quotation omitted). Given the strong

9    presumption against removal, any doubts regarding the right to removal must be resolved in

10   favor of remand to state court. *Hansen*, 902 F.3d at 1057; *Matheson v. Progressive Specialty Ins.*

11   *Co.*, 319 F. 3d 1089, 1090 (9th Cir. 2003). Accordingly, the party seeking removal bears the

12   burden of establishing federal jurisdiction. *E.g.*, *Rodriguez v. AT&T Mobility Servs. LLC*, 728

13   F.3d 975, 978 (9th Cir. 2013). "Considerations of comity make federal courts reluctant to snatch

14   cases which a State has brought from the courts of that State, unless some clear rule demands it."

15   *Nevada v. Bank of Am. Corp.* ("*Nevada*"), 672 F.3d 661, 676 (9th Cir. 2012) (quoting *Franchise*

16   *Tax Bd. v. Constr. Laborers Tr.*, 463 U.S. 1, 20 (1983)). "If a district court determines at any

17   time that less than a preponderance of the evidence supports . . . removal, it must remand the

18   action to the state court." *Hansen*, 902 F.3d at 1057.

19   **C.      Attorney Fees Upon Remand**

20          Per statute, a remand order "*may* require" payment of attorney fees by the removing

21   party. 28 U.S.C. § 1447(c) (emphasis added). "Absent unusual circumstances, courts may award

22   attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable

23   basis for seeking removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005). "In

24   applying this rule, district courts retain discretion to consider whether unusual circumstances

1   warrant a departure from the rule in a given case." *Id.* The objective reasonableness of removal

2   depends on whether the applicable law "clearly foreclosed" the arguments in support of removal.

3   *Lussier v. Dollar Tree Stores, Inc.*, 518 F.3d 1062, 1066–67 (9th Cir. 2008).

### III.   ANALYSIS

**A.   Propriety of Removal**

6          The Parties agree that the question of which court (state or federal) should hear this case

7   hinges on whether the State of Washington is the real party in interest. *See generally* Dkt. Nos.

8   14, 17.

### 1.   The WLAD Claim

10         In *Lucent*, the State of California was found to not be the real party in interest when its

11  agency filed suit on behalf of an employee with a disability. There, multiple factors led the Ninth

12  Circuit to affirm that the district court had properly exercised diversity jurisdiction over the case.

13  First, the relevant state statute contained language explicitly indicating that a judgment would

14  operate in favor of the aggrieved individual by stating that "the person claiming to be aggrieved

15  shall be the real party in interest." *Lucent*, 642 F.3d 737–40 (quoting Cal. Gov't Code §

16  12965(c)(2)). Second, the State's articulated interests in the litigation—consisting of

17  safeguarding the interests "of all persons to seek, obtain, and hold employment without

18  discrimination" and protecting the state from the adverse impacts of such discrimination—were

19  too general. *Id.* Finally, the forms of equitable relief sought were primarily of the kind that could

20  be obtained by the aggrieved individual had he filed his own suit, and the remaining equitable

21  relief requested (training of Defendant's employees) was tangential to the suit. *Id.*

22         Defendant points out that a court within this District has applied similar reasoning in

23  denying a motion to remand filed by the State of Washington in a suit filed under the WLAD.

24  Dkt. No. 17 at 11–12. There, the State filed a state court complaint with only itself listed as a

plaintiff, alleging that the employer defendant: (1) failed to provide reasonable accommodations to injured or disabled employees; (2) did not engage in the required interactive process for determining whether it could reasonably accommodate employees with workplace injuries; and (3) discriminated against a pregnant employee by failing to accommodate her duty modification request. *Washington v. Matheson Flight Extenders, Inc.*, C17-1925, Dkt. No. 1-2 ¶¶ 1.1–1.3, 3.1 (W.D. Wash. Dec. 27, 2017). The complaint named the pregnant employee and included allegations about the discrimination she faced. *Id.* ¶¶ 4.1–4.7. The *Matheson Flight Extenders* court declined to remand the case on grounds that: (1) like the state statute at issue in *Lucent*, the WLAD indicates that prohibiting discrimination is a generalized interest based on the exercise of the state's police power; (2) the suit was filed "on behalf of one employee in particular" even though it sought relief for all employees aggrieved by the defendant's actions; and (3) the remaining relief sought was tangential to the relief sought for that particular employee's personal benefit. *Id.*, 2018 WL 2440643, at *2 (W.D. Wash. May 31, 2018).

On the other hand, Plaintiff insists that the instant suit is more akin to *Nevada v. Bank of America Corporation*, in which the Ninth Circuit found a state to be the real party in interest. 672 F.2d 661 (9th Cir. 2012); *see* Dkt. No. 14 at 13–16; Dkt. No. 18 at 2–4. There, the Nevada Attorney General had filed suit against Bank of America for predatory mortgage lending practices in violation of state law after investigating complaints from "more than 150 consumers, housing counselors and other industry resources." *Nevada*, 672 F.2d at 665. The appellate court applied *Lucent*'s reasoning to hold that the State of Nevada was the real party in interest because, *inter alia*:[1] (1) the suit was filed to protect hundreds of thousands of homeowners; (2) Nevada

---

[1] A core issue in the *Nevada* case appeal was whether the case qualified as a mass or class action. *See Nevada*, 672 F.2d at 667–69. However, the opinion's reasoning in determining the real party in interest is equally applicable in cases where diversity jurisdiction is at issue. *See, e.g.*, *Washington v. Facebook, Inc.*, No. C18-1031, 2018 WL 5617145, at *2 (W.D. Wash. Oct. 30, 2018) (applying this reasoning from *Nevada* to a non-mass action case).

had a specific, concrete interest given that many state residents (not only defrauded borrowers) and the State's economy as a whole had been "particularly hard-hit by the current mortgage crisis"; (3) Nevada's claim for restitution for private parties did not negate the State's strong interest in the litigation; and (4) and the State sought substantial relief inuring to it alone, including enforcement of a consent judgment that disclaimed a private right of action, civil penalties not available to individual consumers, and injunctive relief for which it would need to meet a lower legal standard of proof in state court. *Id.* at 670–72. Importantly, the decision emphasized that the Ninth Circuit had adopted an approach of looking at the entire case record rather than claim-by-claim to determine whether a "substantial state interest separate and distinct from the relief sought on behalf of an individual" exists. *Id.* at 670 (citing *Lucent*, 642 F.3d at 739) (internal quotation omitted). However, merely "tangential" interests, even if unique to the state, would not suffice to render it a real party in interest. *Id.*

Four post-*Nevada* cases filed in this District are instructive. In each case, the State of Washington argued for remand of cases filed to enforce state laws, and in three of them, the State was found to be the real party in interest. *Washington v. CLA Estate Services* alleged violations of the CPA and the Washington Estate Distribution Documents Act. No. C18-480, 2018 WL 2057903 (W.D. Wash. May 3, 2018). The court found that there was "widespread legal support" to deem the State the real party in interest, given that the State has a "quasi-sovereign interest in guaranteeing an honest marketplace and the economic welfare of its citizenry," and enforcement of consumer protection laws "has long been recognized as an area traditionally regulated and litigated by the states." *Id.* at *1 (internal citations omitted). In *Matheson Flight Extenders*, discussed *supra*, a WLAD claim filed primarily to benefit one employee was found insufficient to render the State of Washington the real party in interest. 2018 WL 2440643, at *2. In *Washington v. Facebook, Inc.*, the State was determined to be the real party in interest when

suing to enforce the Fair Campaign Practices Act because it had a specific, concrete interest in ensuring fair elections and public confidence in government processes, sought relief available only to the state (civil penalties, treble damage, and costs and fees), and no restitution to aggrieved individuals was available under the statute. No. C18-1031, 2018 WL 5617145, at *4–5 (W.D. Wash. Oct. 30, 2018). Significantly, "the State's interest in ensuring fair and transparent elections" was found to be "fundamentally dissimilar from the generalized interest in preventing employment discrimination" that was insufficient in *Lucent*. Most recently, in *Washington v. National Maintenance Contractors, LLC*, the State of Washington was found to be the real party in interest in a case regarding violations of the CPA and the Washington Franchise Investment Protection Act. The State claimed that while defendants had targeted non-English speaking residents with scant franchising experience, they had also "harmed Washington's marketplace because it has had to contend with Defendants' artificially low pricing for janitorial services." No. C21-638, 2021 WL 3886833, *1–3 (W.D. Wash. Aug. 31, 2021). Of these cases, only *Matheson Flight Extenders* was filed under the WLAD.

As an initial matter, unlike the statute in *Lucent*, none of the statutes at issue in this case specify that the person aggrieved is the real party in interest. *See generally* HSA, RCW 43.10.005; WLAD, RCW 49.60.10, *et seq.*; and CPA, RCW 19.86.010, *et seq.* Further, the Complaint significantly does not name any specific individual on behalf of whom the State seeks relief.[2] Rather, the Complaint describes Defendant's alleged policy and practice of discriminating against its female workers and, in particular, its pregnant employees. *See generally* Dkt. No. 1-2. Indeed, the relief the State seeks (under the WLAD as well as the CPA

---

[2] In *Matheson Flight Extenders*, the complaint focused exclusively on the claims of a single employee of the defendant. *See* No. C17-1925, Dkt. No. 1-2.

and HSA) includes declaratory relief, injunctive relief, and civil penalties that would inure to the benefit of the population of the State as a whole. *See id.* ¶¶ 6.1–6.9.

The State essentially brings a pattern-and-practice case on behalf of all of Defendant's affected employees.[3] These suits by the State that challenge systemic issues (versus a one-time violation) have "the potential to change the policies and practices of a large, corporate employer operating throughout the State, with an impact that would inure to past, present, and future O'Reilly employees as well as the States' general labor pool." Dkt. No. 18 at 2. When a State successfully brings a pattern-and-practice case, the impact is felt by employers throughout the State, as it sends a message to all prospective employers that the State will protect the rights of its citizens by actively enforcing the statute at issue. In such cases (versus actions on behalf of a single employee), the State has a specific, concrete interest in stopping alleged widespread illegal activity. The Court also agrees with Plaintiff that it would be perverse to read the caselaw in such a way that bars the Attorney General from enforcing the WLAD (unless it also brings a CPA claim) in state court. *See* Dkt. No. 18 at 5. However, the Court recognizes that there is limited caselaw on whether a WLAD claim alone is sufficient to render a state the real party in interest. Given this and the Ninth Circuit's instruction to analyze the entire case record and not individual claims, *Nevada*, 672 F.2d at 670, the Court now turns to the other claims in the Complaint.

//

//

//

---

[3] In its Notice of Removal, Defendant points to a press release filed by the State announcing the filing of the pending action brought on behalf of a group of women believed to encompass at least 22 individuals. Dkt. No. 1 at 4 (citing Press Release, Wash. State Off. of the Att'y Gen., AG Ferguson files lawsuit against O'Reilly Auto Parts for discrimination and retaliation against pregnant employees (Aug. 16, 2023), https://perma.cc/S2ZV-337N) ("At least 22 women suffered physically, emotionally and financially as a direct result of O'Reilly's unlawful actions."). The reference to "[a]t least 22 women" indicates the number could increase as the State conducts discovery.

1

2.     **The CPA Claim**

2        Defendant argues that the CPA claim was fraudulently pleaded merely to evade federal

3    jurisdiction. Dkt. No. 17 at 18. But there is no evidence in the record that Plaintiff pleaded the

4    CPA claim for nefarious purposes; indeed, Plaintiff has provided ample argument to show that

5    the CPA claim was pleaded in good faith, including examples of other suits filed by the Attorney

6    General pleading CPA violations in the employment context and legal authorities demonstrating

7    that misrepresenting job opportunities can give rise to an actionable CPA claim. *See* Dkt. No. 18

8    at 7–8 (citing, *inter alia*, *In the Matter of Confidential Consumer Prot. Investigation*, 512 P.3d

9    904, 910 (Wash. Ct. App. 2021), *review denied*, 516 P.3d 371 (Wash. 2022), and *Ruiz Torres v.*

10   *Mercer Canyons Inc.*, 835 F.3d 1125, 1130–32 (9th Cir. 2016)). Further, as Plaintiff correctly

11   points out, Defendant has provided no authorities to support the application of the fraudulent

12   joinder exception to a *claim* rather than to *a party*. *See* Dkt. No. 18 at 6.

13       Additionally, the Court is not inclined to conduct a searching examination into the merits

14   of Plaintiff's CPA claim at the motion-to-remand stage. *See, e.g.*, *Grancare, LLC v. Thrower by*

15   *& through Mills*, 889 F.3d 543, 548–49 (9th Cir. 2018) ("We have declined to uphold fraudulent

16   joinder rulings where a defendant raises a defense that requires a searching inquiry into the

17   merits of the plaintiff's case, even if that defense, if successful would prove fatal."); *Theno v.*

18   *Abbot Lab'ys*, No. C21-585, 2021 WL 4732553, at *1 (C.D. Cal. Mar. 1, 2021) (quoting

19   *Grancare* for the proposition that the court's job on reviewing a remand motion is not to conduct

20   a searching inquiry into the merits).[4]

21

22   ───────────────

[4] The Washington state courts will decide, based on the facts that will be developed, the significance to a CPA claim
23   of including words expressing a commitment to a policy versus an affirmative representation that an entity does not
discriminate. But whatever the sincerity (or apparently self-proclaimed insincerity) of Defendant's professed
24   practices or policies with regard to equity in employment (*see* Dkt. No. 17 at 25 (stating that "these statements on
O'Reilly's website are 'mere puffery' or 'aspirational statements' ")), the Court advises Counsel to take care before

1

       3.      **The HSA Claim**

2

       Plaintiff makes a colorable argument that the HSA requires the Attorney General to

3

investigate, making the State of Washington "essentially a *de facto* interested party for cases

4

arising from HSA violations." Dkt. No. 14 at 12 (citing RCW 43.10.005(6) ("The attorney

5

general shall investigate complaints and enforce this section . . . .")). The Parties do not cite, and

6

the Court has not found, any authorities interpreting this provision. However, the fact that the

7

State of Washington has a law specifically protecting pregnant and breastfeeding employees—

8

which the State is mandated to investigate and enforce—indicates a non-trivial state interest in

9

eradicating and addressing pregnancy discrimination in the workplace.

10

       Looking to the entire case record—given the number of aggrieved individuals involved,

11

Plaintiff's requests for relief that would inure at least in part only to the State, and the inclusion

12

of the CPA and HSA claims—the Court finds that this case is more like *Nevada* than *Lucent*. The

13

State of Washington has adequately demonstrated that it is the real party in interest in this

14

litigation to require a remand to King County Superior Court.

15

       Finally, "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of

16

removal in the first instance." *Acad. of Country Music v. Cont'l Cas. Co.*, 991 F.3d 1059, 1061

17

(9th Cir. 2021) (internal citation omitted). *See also Hawaii ex rel. Louie*, 761 F.3d at 1034

18

("[A]ny doubt is resolved against removability." (quoting *Luther v. Countrywide Home Loans*

19

20

suggesting that the commitment to non-discrimination of other entities, such as this Court, are potentially "mere puffery" or "aspirational statements" (*see id.* at 24–25).

21

22

The Court also cannot let pass the completely inapt comparison between employer statements regarding discrimination and notices regarding account changes for banking customers. Dkt. No. 17 at 24–25. First, the caselaw cited is totally inapposite to the issue at hand. *See id.* (citing *Sterling Sav. Bank v. Murphy*, 166 Wn. App.

23

1006, at *4 (Wash. Ct. App. 2012) (unpublished, uncitable)). Second, the Court can readily imagine candidates who would be less likely to apply to work for an employer whose job postings or website do not include an anti-discrimination statement—a decision with a much more profound impact than what documents a bank customer

24

might receive when making a beneficiary change.

1    *Servicing LP*, 533 F.3d 1031, 1034 (9th Cir. 2008))). Indeed, "when an action has been brought

2    by a state . . . the need to resolve doubts against the exercise of federal jurisdiction is particularly

3    acute." *In re Facebook*, 354 F. Supp. 3d at 1124. Plaintiff has, at minimum, succeeded in raising

4    doubts that removal was proper in this instance, and Defendant fails to carry its burden of

5    establishing that removal is proper.

6         For the reasons articulated above, the Court FINDS that removal was improper and

7    GRANTS Plaintiff's motion to remand.

8    **B.    Propriety of Awarding Costs and Fees**

9         Plaintiff seeks an award of its costs and fees associated with bringing this motion. Dkt. No.

10   14 at 17. The applicable law in this case did not "clearly foreclose[]" Defendant's arguments in

11   favor of removal. *See Lussier*, 518 F.3d at 1066–67. Even though the courts in *CLA Estate Services*

12   and *National Maintenance Contractors* awarded attorney fees associated with remand motions,

13   those cases were not filed pursuant to the state's interests in curbing discrimination. *See* 2018 WL

14   2057903, at \*2, \*3 (finding the State of Washington's interest "unquestionable" in litigation filed

15   under the CPA and the Washington Estate Distribution Documents Act); 2021 WL 3886833, at

16   \*1, \*4 (granting the State of Washington's request for attorney fees in a case  filed pursuant to the

17   CPA and the Washington Franchise Investment Protection Act where the defendants did not even

18   address the State's request for fees). Defendant had an "objectively reasonable" basis to argue that

19   under *Lucent*, this case was properly removed to federal court. *Franklin Cap. Corp.*, 546 U.S. at

20   141. For the reasons articulated above, the Court DENIES Plaintiff's request for attorney fees and

21   costs.

22        //

23        //

24        //

1

IV.   CONCLUSION

2      Plaintiff's motion to remand is GRANTED and its request for attorney fees and costs is

3 DENIED. The Court REMANDS this case to King County Superior Court, effective immediately.

4 The Clerk of Court is DIRECTED to close this case

5      Dated this 7th day of December 2023.

6

7                                              _____

Tana Lin

8                                              United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24